UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20810-CIV-HOEVELER

MARIO RENE CASTILLO,

    Plaintiff,

v.

LINDA SWACINA, USCIS MIAMI DISTRICT DIRECTOR,
ERIC HOLDER, ATTORNEY GENERAL OF THE UNITED STATES,
JANET NAPOLITANO, SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY (DHS)U.S. CITIZENSHIP AND IMMIGRATION
SERVICES,

    Defendants.
_____/

**CLOSED CIVIL CASE**

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE comes before the Court on the Defendants' Motion to Dismiss. The Court has reviewed the motion, response, and reply, and finds that dismissal is appropriate.

Plaintiff challenges the decision of the United States Citizenship and Immigration Services (USCIS), issued June 22, 2012, which denied Plaintiff's request to obtain status as a permanent resident. Plaintiff, a Guatemalan native currently residing in the United States, raises a single basis for his complaint against USCIS before this Court: that USCIS failed to follow 8 C.F.R. 103.2(b)(16)(i), which provides that:

> if the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information.

Plaintiff concedes that this Court lacks jurisdiction to review the USCIS's denial of Plaintiff's request, as such decision is committed to the discretion of the USCIS, but contends that this Court may adjudicate Plaintiff's claim of procedural error - a proposition with which the United States agrees.

## BACKGROUND

As this case is before the Court on a motion to dismiss, the Court accepts all factual allegations in the Complaint as true. The summary of the facts, below, relies on the Complaint and excerpts of Plaintiff's own testimony, as reported in the Decision issued by USCIS dated June 22, 2012, denying Plaintiff's request for permanent residency.[1]

Plaintiff entered the United States in April 1989, as a temporary visitor, and was eligible to remain until October 30, 1989. On May 15, 1989, Plaintiff filed a request for asylum alleging that he was fleeing past or future persecution "based upon his involvement in former Guatemalan government's police force and penal institutions." Complaint, ¶ 2. Twelve years later, Plaintiff was interviewed by United States immigration officials

---

[1] This Court properly relies on the content of that document, as it was attached to Plaintiff's complaint. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). See also, Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985) (report of the immigration agency was attached to the complaint and properly considered by court in ruling on Rule 12(b)(6) motion).

in Miami, at the Asylum Office, on May 31, 2001, and answered questions as to his previous employment by the Guatemalan government as a police officer (1974-1978) and a detective (1978-1984), including time working with a military intelligence unit identified as G2[2] which investigated suspected guerrillas, and also as a prison warden (1985-1987).

On March 5, 2002, Plaintiff was determined to be ineligible for asylum, and that decision was upheld upon review by the Asylum division of the Office of International Affairs. According to a summary of the facts in the USCIS Decision dated June 22, 2012, that review included a finding that "in light of country conditions information specific to the G-2 and your testimony that you gathered information on an arrested civilian suspected of being guerillas, the evidence establishes that you assist in the persecution of others on the account of political opinion."[3]

---

[2] The record refers to G2 and G-2, interchangeably.

[3] The record does not include a copy of an agency document from 2002 advising Plaintiff that USCIS (then known as the Immigration and Naturalization Service) had made such finding. The record does reveal that in 2002 Plaintiff was notified that he was ineligible for benefits available pursuant to a settlement agreement entered in <u>American Baptist Churches v. Thornburgh</u>, 760 F. Supp. 796 (N. D. Cal. 1991) which provided protections for some citizens of El Salvador or Guatemala whom also met other criteria and sought asylum in the United States. Plaintiff was determined to not be eligible for the reason that "[t]here is no credible evidence that you registered" for such benefits.

On April 10, 2005,[4] Plaintiff was interviewed again at the Miami Asylum Office relating to his request for asylum, and questioned regarding his duties as a warden, at which time he testified that during his time as warden two inmates were killed and twelve guards were arrested. On August 16, 2005, he was found ineligible for asylum status and referred to an Immigration judge for removal proceedings.

On September 7, 2005, Plaintiff was notified that his request for asylum (pursuant to Form I-589) had not been granted and instead was referred to an Immigration Judge for adjudication in removal proceedings, as Plaintiff had not established that he was a refugee. On that same date, he also was notified that his request for suspension of deportation/special rule cancellation of removal had not been granted and was referred to an Immigration Judge for decision, as Plaintiff "appeared to be barred from relief under Section 240A(c)(5) of the Immigration and Nationality Act [("INA")] (persons who ordered, incited, assisted, or otherwise participated in the persecution of others on account of race, religion, nationality, membership in a particular social group, or political opinion)."[5]

---

[4] The Complaint states that the interview was on April 10, 2005, but the USCIS record states that Plaintiff was interviewed on August 10, 2005.

[5] At approximately the same time, Plaintiff received a Notice to Appear in Immigration Court on May 18, 2006; the Notice advised him that removal proceedings had been instituted, as he had remained in the United States without authorization.

4

During the course of the removal proceedings, Plaintiff's wife[6] submitted a petition, pursuant to form I-130, seeking immigration benefits for her husband. On April 16, 2009, the Immigration Judge terminated Plaintiff's removal proceedings, noting that Plaintiff's request for adjustment of status was pending before the agency. The I-130 request was approved on May 26, 2009, and - consistent with that approval, which required Plaintiff to apply for permanent residency within thirty days - on June 7, Plaintiff submitted Form I-485, seeking permanent residency in the United States.

On September 14 and November 9, 2009, Plaintiff appeared for USCIS interviews at the Hialeah Field Office. He was questioned about his duties as a detective and as a warden in Guatemala.

On June 22, 2012, Plaintiff's application for status as a permanent resident was denied. According to the report of that decision, the USCIS declined to exercise its discretion to grant Plaintiff's request after finding his testimony to be not credible. Specifically, the USCIS noted that "the testimony you provided during your interviews concerning your involvement (both indirect/direct) and awareness of the acts committed ... with the aid of the police detectives in Guatemala is not found credible as it is contrary to the extensive country condition information found regarding the human rights violations committed ...." Concluding that the negative factors (his conduct in Guatemala, and residence in the United States illegally)

---

[6] Plaintiff's wife also is a native of Guatemala, but she had received a Certificate of Naturalization from the USCIS on September 29, 2006.

outweighed the positive factors (his family ties, and length of residence in the United States), the USCIS advised Plaintiff that he was not authorized to remain in the United States and should make arrangements to depart as soon as possible.

On March 7, 2013, Plaintiff filed this case, asserting jurisdiction under several statutes: federal question jurisdiction, 28 U.S.C. § 1331, the Mandamus Act, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedures Act ("APA") (5 U.S.C. § 701 et. seq.).[7] Specifically, Plaintiff claims that Defendants violated a regulatory provision and, in doing so, committed a procedural error necessitating this Court's intervention.

## ANALYSIS

Plaintiff alleges that the USCIS relied on "un-refuted testimony from Plaintiff's asylum interviews over 7 and 11 years old respectively, the November 9, 2009, I-485 interview, and secondary source conditions" and that he "was never provided the opportunity to rebut any of the derogatory information presented against him," contrary to the provisions of 8 C.F.R. 103.2(b)(16)(i). That specific regulation provides that a petitioner is entitled to be advised of derogatory information which forms the basis of an adverse

---

[7] As Defendants correctly argue, the Mandamus Act and the Declaratory Judgment Act need not be addressed here - as the APA provides the relevant framework.

6

immigration decision and offered an opportunity to rebut the information, but that right to be advised and to offer rebuttal is based on the petitioner being unaware of such information.

Plaintiff acknowledges that when he was questioned by the agency, the interviewer "did allude to some [country] conditions through his line of questioning" but Plaintiff claims that he was unaware of the specific statistics or information that was used to deny his application. He says that he was not provided an opportunity to rebut "general sources" and "general reports from outside public sources"[8] used against him, and complains that USCIS is relying on these general sources and has not referenced any specific instances of Plaintiff mistreating anyone under his supervision.

The Court has reviewed the record presented by Plaintiff, and finds that Plaintiff himself had testified as to his awareness of at least some of these general conditions in Guatemala. For example, during his efforts to obtain asylum (in 2001) Plaintiff testified that the Guatemalan army was doing "raids looking for guerrillas" in 1983-84 and that the G2 would have "confrontations with the guerrillas." He also admitted that he "saw them mistreat the prisoners, like kicking them and pushing them down on the way to the bathroom."[9] When the interviewer asked Plaintiff: "Did you hear

---

[8] Plaintiff admits that this information is "widely available to the public" but complains that he was not made aware that the USCIS was using this public information against him.

[9] When he was told by a superior to remain silent, Plaintiff claims to have raised his complaints again, but the USCIS concluded that Plaintiff

7

anything else [about G2], like the mass graves and horrors enacted by G2?" Plaintiff responded: "I did not know anything[,] I am a civilian. That is all [I] ever heard." He also testified that "others may have harmed people but we did not" - an apparent concession by Plaintiff that he was aware of the G2's misconduct, even if he specifically disclaimed any direct role in such acts.

Moreover, in September 2005, Plaintiff was advised by the USCIS, in a Notice Regarding Referral of Application for Suspension of Deportation or Special Rule Cancellation of Removal that he may be barred from immigration relief under Section 240A(c)(5) of the INA. That Notice specifically referenced the INA provision barring "persons who ordered, incited, assisted, or otherwise participated in the persecution of others on account of race, religion, nationality, membership in a particular social group, or political opinion." After receiving this notice, Plaintiff was interviewed on two additional occasions (in 2009), which suggests that he had an opportunity at those subsequent interviews to disprove that he had participated in the persecution of others.[10]

Taking into consideration Plaintiff's own testimony, the USCIS found that since Plaintiff was a "member of the police force assigned to work along with G2 military intelligence, it is improbable that [he] would be unaware of

---

continued to perform his duties "and made no further reports of the mistreatment of those captured and arrested."

[10] Plaintiff was interviewed a total of four times by immigration officials (twice in the context of his asylum application and twice during his petition for permanent residency).

8

the abuses that occurred at the hands of the G-2." Further, the agency determined that "according to [his] testimony that [he] gathered information on and arrested civilians suspected of being guerrillas, [he was] involved in the persecution of others on account of their political opinion." The USCIS found Plaintiff's testimony that he had not committed acts of persecution to be lacking in credibility and, based on his admitted employment as a police detective working with G2, and his subsequent promotion to the position of warden of Guatemala's largest prison, the USCIS concluded that Plaintiff had participated in acts which rendered him ineligible for permanent residence in the United States.

While Plaintiff would prefer to have been advised of the specific country reports from academics and other sources as to the conditions in Guatemala at the time he was working with the police force and a military intelligence unit and also as a warden, it is not clear to this Court that such general reports were used as "derogatory information" against Plaintiff such that any failure to provide him with advance notice was a violation of 8 C.F.R. 103.2(b)(16)(i). The information gleaned from such reports appears merely to have provided context for the USCIS's evaluation of Plaintiff's own testimony and the agency's finding that his testimony was not credible.[11] For example, the USCIS found that "it would be unreasonable to believe that you would not have ordered, incited or otherwise been involved and aware of the

---

[11]This Court does not review the USCIS's determination of the credibility of a petitioner's testimony.

9

human rights violations occurring against the suspected guerrillas and inmates considering the positions and duties you held.... [and] you witnessed the abuses that were done at the hands of the G-2 and made only three attempts to report them."

Even if the reports, or a portion thereof, constitute the type of "derogatory information" referenced in the regulation, the Court does not find that Plaintiff was unaware of such information prior to his interviews by USCIS. The Court finds that such general "derogatory information" of the country conditions is information of which Plaintiff was well aware - as a result of his official role as a police detective and warden and also as evidenced in his interviews and responses to the questions posed by the immigration officers.

Although Plaintiff claims that he was denied advance notice that USCIS was relying on selected country reports (and the specific data in such reports) to provide general information about the conditions in Guatemala at the time of Plaintiff's employment as a detective and a warden, the Court does not find that such lack of notice constituted a violation of the applicable regulations. At most, to the extent that the general reports even can be considered as "derogatory information" against Plaintiff, any error committed by the agency in not providing Plaintiff with those country reports was harmless, in light of Plaintiff's own testimony and employment record.

In conclusion, the Court finds that Plaintiff's allegations are insufficient to support his claim of procedural error by Defendants, and

10

therefore dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate. In light of the above, it is

ORDERED AND ADJUDGED that the motion to dismiss is GRANTED with prejudice. This case is closed.

DONE AND ORDERED in Chambers in Miami this 21st day of May 2014.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

copies to: counsel of record